Great Am. Constr. Corp. v Nobre, Inc. (2004 NY Slip Op 50564(U))

[*1]

Great Am. Constr. Corp. v Nobre, Inc.

2004 NY Slip Op 50564(U)

Decided on June 17, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 17, 2004

Supreme Court, Kings County
Great American Construction Corp., Petitioner,
against
Nobre, Inc., Respondents.
135/04

Yvonne Lewis, J.
Great American Construction Corp., the petitioner, has requested of this court an order, pursuant to Lien Law §19(6), to summarily discharge of record four mechanic's liens, totaling $214,805.00, filed by respondent Nobre, Inc. with the Kings County Clerk against four developed parcels of real property; to wit, 89 & 115 Pulaski Street [$79, 625.00 and $78,250.00, respectively, both filed 12/15/03], 89 Vernon Avenue [$45,630.00, filed 12/15/03], and 548-686 Willoughby Avenue [$13,180.00, filed 12/11/03], all located in Kings County, on the ground that it appears on the face of the notices of lien and documentary evidence that there exists no valid lien due to the character of the labor and materials furnished. The four parcels herein concerned are owned by NYC Partnership Housing Development Fund Company, Inc. which had entered into a development agreement to build and sell thirty-one three-family homes on those parcels with Marcy New Homes, LLC, which engaged the petitioner as general contractor of the project. Blanford Construction Corp. was, in turn, hired by the petitioner as a subcontractor to perform certain specified services, including debris removal, excavation, removal of a buried oil tank, concrete work, winterizing, and disposal of fill. The respondent was retained by said subcontractor to perform some of its contractual responsibilities. The petitioner thereafter removed Blanford from the project after numerous written complaints and warnings. At the point of its removal, Blanford, according to the petitioner, had "earned for its aforesaid services (after deducting appropriate back charges) a total of $421,672," although it had been paid $432,379.0, resulting in an overpayment of $10,707.00. Following Blanford's removal from the project, respondent Nobel, Inc. filed the subject liens against Blanford for having failed to make required payments under their subcontract. In addition, the petitioner notes that Nobel, Inc.'s allegations of having been employed by it and/or an entity called The Renovation Generation Community Development Corp. are patently false since it did not in fact employ the respondent and the latter company was never involved in the construction project. A fortiori, the petitioner has attached as an exhibit a "partial waiver of lien" form, dated July 28, 2003, executed by the owner/president of Nobre, Inc. wherein he asserts that he was hired to "furnish labor and/or materials for the new building at New Marcy Homes Project Brooklyn NY for Blanford Construction Corp." In short, the petitioner submits that "[a]t the time respondent filed the. . .notices and thereafter, petitioner did not owe any money to its subcontractor Blanford. Any entitlement to a mechanic's lien against the Properties by respondent as Blanford's subcontractor [*2]and as petitioner's sub-subcontractor was by subrogation to Blanford's right to payment. Since petitioner owed nothing to Blanford when or after the notices of lien were filed, the liens are invalid and without legal effect; and said liens are therefore defective in the face of the notices of lien regarding the character of the labor and/or materials furnished. Petitioner is entitled to summary discharge of the. . . liens or, if the Court determines that some amount was owed by petitioner to Blanford at the time of filing, to an order limiting the effect of the liens to said amount." In support of the foregoing, counsel for the petitioner asserts that §19(6) of the New York Lien Law authorizes a party in interest (eg. a general contractor) to file a petition for an order summarily discharging of record a mechanic's lien that is invalid on its face. Citing J. Bunce Ltd. v. Fahey, 73 AD2d 632, 423 NYS2d 59, counsel noted that the Appellate Division, 2d Dept. has ruled that "Pursuant to statute, a mechanic's lien is valid to the extent of the 'sum earned and unpaid on the contract at the time of filing the notice of lien, and any sum subsequently earned thereon' (Lien Law §4). In the case of a subcontractor, the lien will only attach to those funds due and owing to the general contractor at the time of its filing, or which may thereafter become due and owing. . . ." In addition, counsel made note of two Supreme Court cases. A New York County decision, Ace Contracting Co. v. Garfield & Arma Assocs., 148 Misc. 2d 475, 560 NYS2d 382, which held that "A mechanic's lien is a means of obtaining satisfaction for unpaid services; however, where a subcontractor is the lienor it is based upon the subrogation theory and is only valid up to the amount, if any, still due and unpaid to the contractor. . . .If there are no monies due then there is no fund to which the subcontractor's lien can attach[; and, a Suffolk County case, Mid-Island Lumber & Supply Co., 78 Misc.2d 27, 356 NYS2d 190, which held that a "subcontractor's lien is limited to the amount due and unpaid to its general contractor and '. . .the burden is on the subcontractor to establish. . .money. . .owing to the contractor'."
In opposition, the respondent maintains that he was engaged by Blanford Construction Corp. to do the foundation work with regards to the jobs located at 686 Willoughby Ave. and 89 Vernon Avenue; that when payment was not received for work completed, he suspended work at both sites until he renegotiated with a Mr. Will Clark, who represented to him that he was a principal of Great American Construction Corporation, that he would complete the work on the Pulaski Avenue sites and that payment would be made directly to Nobre Inc. by the petitioner. It is the respondent's position that though initially hired by Blanford, an employer/employee relationship with Great American was created by this renegotiation. This assertion by Nobre's president that an oral agreement was reached between him and the petitioner [following Blandford's failure to make payment to him] is suspect, especially in light of the fact that no invoices were ever directed at the petitioner either prior to or subsequent to Blandford's severance from the project. The respondent adds that he executed a partial waiver of lien upon receipt of $118,395.00 for work that had been completed; however, the balance of the subject liens; to wit, $96,410.00, remains unpaid by both Blanford and Great American. The respondent also notes that Lien Law §9(7) provides that the failure to provide the name of a true owner or contractor, or a mis-description of the true owner does not affect the validity of the lien "on private property" [the quoted portion was added by the respondent and failed to contain the additional proviso that "[t]he notice must be verified by the lienor or his agent, to the effect that the statements therein contained are true to his knowledge except as to the matters therein stated [*3]to be alleged on information and belief, and that as to those matters he believes it to be true."]. In addition, Lien Law §12-a 1. permits a lienor, within sixty days of the original filing, to ". . .amend his lien upon twenty days notice to existing lienors, mortgagees and the owner, provided no action or proceeding to enforce or cancel the mechanic's lien has been brought in the interim where the purpose of the amendment is to reduce the amount of the lien, except the question of willful exaggeration shall survive such amendment." This section is clearly inapplicable since a proceeding to cancel the subject liens has been brought. Nevertheless, the respondent also points out that Lien Law §12-a 2. allows the court, "in a proper case. . ., upon five days' notice to the parties just mentioned, to make an order amending a notice of lien upon a public or private improvement, nunc pro tunc provided it is not to the prejudice of an existing lienor, mortgagee or purchaser in good faith. . ." On the issue of payment, the respondent argues that 1. even if nothing is due at the time a lien is filed, the fact is that a lien may be assertable vis-a-vis future installments on a substantial performance basis; 2. no detailed payment analysis has been furnished to definitively establish that Blanford was fully paid. In fact, a review of a 12-28-2003 Blanford analysis failed to disclose Nobre, Inc.'s work, suggesting that petitioner had not been billed for its work, and hence still owes Blandford the amount owed to it; and 3. the signed waiver of lien can have no bearing on this controversy inasmuch as Lien Law §34 provides that "notwithstanding the provisions of any other law, any contract, agreement or understanding whereby the right to file or enforce any lien created under article two is waived, shall be null and void as against public policy and wholly unenforceable." In addition, the waiver addressed labor and materials that are different from those which are the subject of the within liens. The respondent omitted to cite that the just quoted section provides, however, that "[t]his section shall not preclude a requirement for a written waiver of the right to file a mechanic's lien executed and delivered by a contractor, subcontractor, material supplier or laborer simultaneously with or after payment for the labor performed or materials furnished has been made to such contractor, subcontractor, material supplier or laborer nor shall this section be applicable to a written agreement to subordinate, release or satisfy all or part of such a lien made after a notice of lien has been filed." It therefore follows that the waiver herein is valid inasmuch as the respondent acknowledged that it was executed after partial payment for the labor performed and materials furnished had been made to it as Blandford's subcontractor.
In reply, William B. Clarke, the petitioner's vice-president, denies any verbal agreement to pay the respondent directly, and insists that an overpayment had been made to Blanford. In addition, it is asserted that the liens are inherently defective in light of the foregoing and since there is no privity of contract between respondent and petitioner a fact reinforced by the absence of any invoices from the respondent directly to the petitioner or any written agreement between said parties. Consequently, he concludes that the subject liens cannot be cured by amendment or otherwise, and the petition to have them discharged should be granted.
Lien Law §37 provides that an owner or contractor between whom a contract exists for the improvement of real property may, before of after the commencement of the improvement, execute a bond to the count clerk in such amount as the judge may direct and that, upon approval of such bond by the court and the filing of the bond with the county clerk, the court shall notice an order discharging such property from the lien of every contractor, subcontractor, laborer or materialman performing labor or furnishing materials in connection with the performance of the [*4]contract described in the bond. This was not done in the instant matter. Nevertheless, there appears to be two ways by which an owner or contractor can discharge a valid mechanic's lien so as to deflect any deleterious effect on its business, 1. by executing an undertaking with two or more sufficient sureties to the clerk of the county where the premises are situated, in such sums as the court, or a judge or justice thereof, may direct, not less than the amount claimed in the notice of lien, conditioned for the payment of any judgment which may be rendered against the property for the enforcement of the lien (see Lien Law §19); and, 2. by depositing with the county clerk a sum of money equal to the amount claimed in the notice of lien (see Lien Law §20). 
Although the petitioner herein claims that the subject liens are invalid since they were wrongfully filed by a sub-subcontractor whose employer, the subcontractor, has been fully paid, it bears to note that it has long been established that "under the system of mechanics' liens in this State a subcontractor's lien rests upon the theory of subrogation." (See Tibbets Contracting Corp., v. O & E Contracting Company, Inc., 15 NY2d 324, 258 NYS2d, citing Szemko, et. al. v. Weiner, et. al., 176 AD 620, 163 NYS 382). 
Consequently, despite the fact that the respondent deliberately misstated its relationship to the petitioner in the liens filed so as to falsely convey an unsubstantiated employer/employee relationship, when in reality it was Blandford's subcontractor on this project, the fact remains that the respondent has subrogational rights to the said liens by virtue of its sub-subcontractor status. In addition, it is not at all clear that Blandford is not owed additional monies on a "substantial performance basis," as evidenced by the absence of a "detailed payment analysis" to establish that Blanford was fully paid, and "Blanford's 12-28-2003 analysis" which omits billing for respondent's work. Accordingly, it is the opinion of this court that the petitioner's request for discharge of the subject liens must be denied. Petitioner must look to the provisions of Lien Law §§ 19 and 20 for any relief, and the respondent is directed to amend the said liens to properly identify the parties, and to correct the total amount thereof at $96,410.00, the remaining balance owed to the respondent for the work done on Blanford's behalf. This constitutes the decision and order of this Court.
_________________________________
 JSC